IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Tremain Hogan,

    Plaintiff,

v.

Ryan Householder, *et al.*,

    Defendants.

Case No. 2:22-cv-3741
Judge James L. Graham
Magistrate Judge Caroline H. Gentry

Opinion and Order

Plaintiff Tremain Hogan, a state prisoner proceeding *pro se*, brings this action under 42 U.S.C. § 1983 alleging that two corrections officers used excessive force on him in violation of the Eighth Amendment to the United States Constitution. This matter is before the Court on defendants' motion for summary, which the Court denies for the reasons stated below.

I.     Background

On August 17, 2021 at the Madison Correctional Institution, defendant Officer Ryan Householder was escorting Plaintiff Hogan in handcuffs from a holding area to a cell. Another inmate, Anthony Holt, was either already in the cell or being taken there at the same time. It is undisputed that Holt's handcuffs were removed first and, as Officer Householder was removing Hogan's handcuffs, an altercation broke out between the two inmates.

The parties offer different versions of the altercation and of the interactions which followed between Hogan and corrections officers. Hogan states in a sworn affidavit that inmate Holt assaulted him without provocation. Hogan Aff., ¶ 7. Shortly before the incident, another inmate warned Hogan that he had overheard Officer Householder and defendant Officer Zachary Haynes instructing Holt to beat Hogan up. *Id.*, ¶ 2. In an effort to avoid being taken to a cell with Holt, Hogan feigned being suicidal, but this was unsuccessful. *Id.*, ¶ 3.

Once they arrived at the cell, Officer Householder took Holt's handcuffs off first, which gave Holt an opportunity to begin hitting Hogan before his handcuffs were fully removed. Holt struck "blows to [Hogan's] face and body. *Id.*, ¶ 7. Officers Householder and Haynes allegedly

1

spent "several minutes of watching" Holt fight Hogan before calling for backup, entering the cell, and deploying pepper spray. *Id.*, ¶ 8. Holt was taken out of the cell. *Id.*, ¶ 9.

While Hogan was on the floor, Officer Householder slammed his head on the ground and told him to stop resisting. *Id.*, ¶ 10. Hogan states that his hands were on the ground and that he was not resisting. *Id.* Officer Householder then handcuffed Hogan and lifted him to his feet, and he and Officer Haynes escorted Hogan to the infirmary. *Id.*, ¶¶ 11, 13. While escorting Hogan, Officers Householder and Haynes repeatedly grabbed his thumbs and fingers and bent them in such a manner that they felt dislocated or out-of-socket. *Id.*, ¶ 12.

When they arrived at the infirmary "to have the pepper spray treated," Officer Householder put Hogan's head in the sink and turned the water "to the max," such that Hogan had difficulty breathing. *Id.*, ¶ 13. Officer Householder laughed and asked Hogan if he had "had enough." *Id.* Officers Householder and Haynes prevented Hogan from receiving any medical treatment from a nurse even though Hogan said his fingers "felt like they were broken." *Id.*, ¶ 14.

Officers Householder and Haynes escorted Hogan to a segregation cell. *Id.*, ¶ 14. They continued to bend his fingers, causing Hogan at one point to scream. *Id.*, ¶¶ 15–16. Officer Householder asked Hogan, "Did your victim scream like that?" *Id.*, ¶ 16. Once Hogan was in his cell, Officers Householder and Haynes used pepper spray on him and "cut the water off" to the cell so Hogan could not wash his face. *Id.*, ¶ 17.

Defendants tell a much different story.[1] Officer Householder stated in an Incident Report and Use of Force Report that as he removed Hogan's handcuffs, Hogan "began throwing closed fist strikes" at Holt, who fought back. Doc. 30-2 at PAGEID 160. A call for backup was made, and Officer Christian Butler deployed pepper spray to the faces of both inmates. *Id.* at PAGEID 166. Holt complied with orders to be cuffed, but Hogan continued fighting. *Id.* at PAGEID 160. Officer Householder "gained control of Inmate Hogan's upper body and placed him on the ground." *Id.* at PAGEID 161. Officer Haynes responded to the call for backup, and he, along with Officers Butler and E.T. Stevens, helped Officer Householder maintain control of Hogan on the ground. *Id.* at PAGEID 166, 170, 173. One or more officers cuffed Hogan.

---

[1] The Court notes that defendants tell their story entirely through statements made in Incident Reports, Use of Force Reports, Conduct Reports, and Medical Exam Reports prepared after the incident. Defendants have not submitted affidavits, declarations, or deposition testimony of Householder, Haynes, or any witnesses. For purposes of the present motion only, the Court sets aside any hearsay concerns regarding the statements made in the various Reports.

2

Officers Householder, Haynes, and A.J. Butz escorted Hogan to the infirmary. *Id.* at PAGEID 161, 164, 173. According to them, Hogan resisted and attempted to flail and pull away during the escort. *Id.* at PAGEID 161, 164, 173. After Hogan ignored a warning to stop resisting, Officers Householder and Haynes applied "joint manipulation" on Hogan's wrist to maintain control of him. *Id.* at PAGEID 161, 173. They dropped Hogan off at the infirmary, where he was evaluated by medical staff. *Id.* at PAGEID 173.

According to a Medical Exam Report, Hogan complained to a nurse of pepper spray being in his eyes. Doc. 30-1 at PAGEID 154. The nurse did not observe any bruises or injuries. *Id.* Hogan's eyes and face were cleansed, and he was released back to corrections officers. *Id.*

**II.        Standard of Review**

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

3

one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

**III.     Discussion**

A plaintiff asserting a § 1983 claim for damages against a state official must establish that: (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The "clearly established" prong of the inquiry is not at issue here. While defendants generally assert that they are entitled to qualified immunity, their argument is based solely on the claim that their conduct did not violate the Eighth Amendment.

"[T]he Eighth Amendment's ban on cruel and unusual punishment bars excessive force against convicted persons." *Hopper v. Phil Plummer*, 887 F.3d 744, 751 (6th Cir. 2018); *see also Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023) (the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain on prisoners") (internal quotation marks omitted). An Eighth Amendment claim for excessive force has both an objective and subjective component. *See id.*

Under the objective component, a plaintiff must show that defendant used more than *de minimus* force against him to inflict pain. *Id.* The standard is "relaxed" and plaintiff need not show he suffered "extreme" or "serious" injury. *Id.*. A "minor" injury will suffice, although a "push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam) (internal quotation marks omitted). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." *Id.*

The "core" inquiry is the subjective one: "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 37 (internal quotation marks omitted). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical

punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Defendants argue that the evidence conclusively shows they did not use excessive force against Hogan. In their view, the evidence demonstrates that in response to Hogan assaulting Holt, defendants intervened to maintain order and used only the force necessary to separate the two inmates and bring a resisting Hogan to the ground so officers could place him in handcuffs. The force they used was the deployment of pepper spray and the officers' leveraging of their body weight to pin Hogan to the floor. When Hogan continued to resist while being escorted to the infirmary, defendants used joint manipulation[2] on his wrists to keep control of him.

As detailed above, Hogan has submitted evidence to the contrary. In reply, defendants argue that Hogan's affidavit is "clearly false" and should not be considered. Doc. 35 at PAGEID 208. Defendants do not challenge the form or admissibility of the affidavit, which is signed, sworn, notarized, and based on Hogan's personal knowledge. *See* Fed. R. Civ. P. 56(c)(4). Instead, defendants believe the affidavit is false because it contains Hogan's "own version of facts not supported by any other evidence and clearly contradicted by Defendant's evidence." *Id.*

Defendants' attempt to discount Hogan's affidavit must be rejected. Their argument goes to the weight of the evidence, an improper consideration for the Court at the summary judgment stage. *See Daugherty*, 544 F.3d at 702. Defendants attack the affidavit as self-serving, but only when a statement or testimony is "blatantly and demonstrably false" may a court determine that it cannot be used to create a genuine dispute of material fact. *See Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020); *see also Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 841 (6th Cir. 2021) ("As courts have explained, parties should avoid this "self-serving" label because it does nothing to undermine the other side's evidence under Rule 56.").

In defendants' view, Hogan's affidavit must be false because a nurse stated in the Medical Exam Report that Hogan was "without bruises or obvious injuries" when he came to the infirmary. Doc. 30-1 at PAGIED 154. However, Hogan's affidavit provides grounds for a factfinder to discredit the nurse's statement. Hogan states that defendants took him to the infirmary, where Officer Householder himself flushed Hogan's face of the pepper spray. Defendants "would not allow [him] to have medical treatment." Hogan Aff., ¶ 14. Hogan was only able to blurt out to the nurse that it felt like his fingers were broken before defendants removed him from the infirmary. *Id.*

---

[2] Defendants have not defined or described the term "joint manipulation."

A jury thus could find that the nurse did not have an opportunity to properly examine or observe Hogan.

Moreover, the critical inquiry is the force used, not the injury. *See Wilkins*, 559 U.S. at 37–38; *Hudson*, 503 U.S. at 7. According to Hogan's affidavit, the force used included the initial use of pepper spray, Officer Householder slamming Hogan's head to the ground, and Officers Householder and Haynes pulling and bending his thumbs and fingers to the point they felt like they were broken. Hogan further states that Officer Householder forced his head in a sink with the "max" spray of water in his face. Hogan Aff., ¶ 13. After leaving the infirmary, defendants again used force on his fingers, with one of them "popp[ing] out of place." *Id.*, ¶ 16. Defendants then used pepper spray on Hogan after they had placed him in a cell. The Court finds that these alleged uses of force were more than *de minimus*.

The Court further finds that plaintiff has submitted sufficient evidence to satisfy the subjective component of the analysis at the summary judgment stage – evidence which, if credited, shows defendants did not have a legitimate purpose in using force. Hogan denies that he initiated the altercation with inmate Holt. He says he was told by an inmate, who had overheard defendants speaking with Holt, that defendants instructed Holt to beat him up. Officer Householder allegedly carried out this plan by removing Holt's cuffs first before fully removing Hogan's, such that Hogan was left in a compromised position when Holt first attacked him. Defendants watched the inmates fight for several minutes. Once officers deployed pepper spray and removed Holt from the cell, Officer Householder slammed Hogan's head to the ground even though Hogan says he was not resisting. Defendants grabbed and bent Hogan's thumbs and fingers even though he was cuffed and not resisting. After causing Hogan to scream when one of his fingers popped out of socket, Officer Householder asked Hogan if his victim had screamed like that. When flushing Hogan's face with maximum water force to the point Hogan "could not breath[e]," Officer Householder laughed and asked if Hogan had "had enough." *Id.*, ¶ 13. Finally, Hogan states that defendants used pepper spray on him after they had returned him to a cell and then "cut the water off" so Hogan could not wash his face. *Id.*, ¶ 17. A jury, crediting Hogan, could find that defendants' purpose in using force on him was not to maintain or restore discipline, but to maliciously and sadistically inflict pain.

## IV.   Conclusion

Accordingly, defendants' motion for summary judgment (doc. 30) is DENIED. Plaintiff's motion for leave to file his brief in opposition one day late (doc. 37) is GRANTED.

The Court notes that plaintiff previously moved for the appointment of legal counsel, a request which the Magistrate Judge denied without prejudice to him renewing should defendants' dispositive motion be denied. With the Court now having denied defendants' motion, plaintiff is instructed to notify the Court within 30 days of receipt of this Order if he wishes to renew his request for the appointment of counsel.

<u>s/ James L. Graham</u>  
JAMES L. GRAHAM  
United States District Judge

DATE: August 19, 2024